## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JUAN JIMENEZ PAULINO and** | : | |
| **MANUEL CEBALLOS,** | : | |
|     **Plaintiffs** | : | |
| | : | |
| **v.** | : | **C.A. NO.:** |
| | : | |
| **HATCH LANDSCAPE AND DESIGN, INC.** | : | **Jury Trial Requested** |
| **a/k/a HATCH ASPHALT MANAGEMENT, alias,** | : | |
| **THE HATCH GROUP, INC., alias, and** | : | |
| **JARED HATCH, alias,** | : | |
|     **Defendants** | : | |

## COMPLAINT

### I.    Introduction

1.    This is an action brought by Plaintiffs Juan Jimenez Paulino and Manuel Ceballos against their former employers, Hatch Landscape and Design, Inc. a/k/a Hatch Asphalt Management, alias, The Hatch Group, Inc., alias, and Jared Hatch, alias, seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, costs, and other equitable relief, arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Massachusetts Wage Act ("Wage Act"), M.G.L. c. 149 § 148, *et seq.* and M.G.L. c. 151, § 1, *et seq.*, and the Massachusetts Prevailing Wage Law, ("Prevailing Wage Law") M.G.L. c. 149, §§ 26 – 27, *et seq.*

### II.    Parties

2.    Plaintiff Juan Jimenez Paulino ("Plaintiff Paulino") is, and was at all relevant times, a resident of the City of Woonsockett, County of Providence, and State of Rhode Island. At all times relevant to this action, Plaintiff Paulino was an employee within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA, M.G.L. c. 149 § 148 and M.G.L. c. 151, § 1, *et seq.* of the Wage Act, and M.G.L. c. 149, §§ 26 – 27 of the Prevailing Wage Law employed by Defendants.

3.      Plaintiff Manuel Ceballos ("Plaintiff Ceballos") is, and was at all relevant times, a resident of the City of Haverhill, County of Essex, and Commonwealth of Massachusetts.  At all times relevant to this action, Plaintiff Ceballos was an employee within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA, M.G.L. c. 149 § 148 and M.G.L. c. 151, § 1, *et seq.* of the Wage Act, and M.G.L. c. 149, §§ 26 – 27 of the Prevailing Wage Law employed by Defendants.

4.      Unless otherwise specified, the term "Plaintiffs" as hereinafter used shall refer collectively to each and every Plaintiff named or described in the instant action.

5.      At all relevant times, Defendant Hatch Landscape and Design, Inc. a/k/a Hatch Asphalt Management, alias, ("Defendant Hatch Landscape") was a domestic profit corporation duly incorporated under the laws of the Commonwealth of Massachusetts with a principal place of business located at 40 Cape Road, Milford, MA 01757.  On information and belief and at all relevant times, Defendant Hatch Landscape was and is the same entity and/or operated and operates as the alter ego of Defendant The Hatch Group, Inc., alias.

6.      At all relevant times, Defendant The Hatch Group, Inc. alias, ("Defendant Hatch Group") was a domestic profit corporation duly incorporated under the laws of the Commonwealth of Massachusetts with a principal place of business located at 40 Cape Road, Milford, MA 01757. On information and belief and at all relevant times, Defendant Hatch Group was and is the same entity and/or operated and operates as the alter ego of Defendant Hatch Landscape.

7.      At all relevant times, Defendants Hatch Landscape and Hatch Group were Plaintiffs' employers within the meaning of 29 U.S.C. §§ 203(a) and 203(d) of the FLSA and M.G.L. c. 149 § 148, M.G.L. c. 151, § 1, *et seq.* of the Wage Act, and M.G.L. c. 149, §§ 26 – 27 *et seq.* of the Prevailing Wage Law.

8.     Defendant Jared Hatch, alias ("Defendant Hatch") is a resident of the Town of Medford, County of Norfolk, and Commonwealth of Massachusetts.

9.     On information and belief, Defendant Hatch is and was at all relevant times the President and Manager of Defendants Hatch Landscape and Hatch Group and has a material ownership interest and operational control therein, and was responsible, in whole or in part, for the wage payment policies, practices, and procedures, and/or the implementation thereof, complained of herein.

10.     Unless otherwise specified, the term "Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action.

### FLSA Liability Allegations

11.     Defendants are and, at all relevant times, were engaged in related activities performed through unified operation and/or common control for a common business purpose and are, and at all times hereinafter mentioned, were an enterprise within the meaning of 29 U.S.C. § 203(r).

12.     At all relevant times, Plaintiff Paulino was "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203 (b), (i)-(j), 206(a), and 207(a), in his capacity as asphalt laborer employed by and performing work for Defendants.

13.     At all relevant times, Plaintiff Ceballos was "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203 (b), (i)-(j), 206(a), and 207(a), in his capacities as asphalt laborer and truck driver employed by and performing work for Defendants.

14.     At all relevant times, Defendants individually and/or jointly were an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(s).

### III.     Jurisdiction

15.     The United States District Court for the District of Massachusetts has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts claims arising under Federal law; specifically, the FLSA, 29 U.S.C. § 201, *et seq.*  Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case and controversy.

### IV.     Venue

16.     Venue is proper in this Court insofar as the Defendants are doing business in Massachusetts and, therefore, are deemed to reside in the District of Massachusetts in compliance with the requirements set forth in 28 U.S.C. § 1391.  Moreover, a substantial part of the acts and/or omissions giving rise to the claims occurred in the District of Massachusetts.

### V.     Exhaustion of Administrative Requirements

17.     On May 29, 2020, Plaintiff Paulino filed a Wage Complaint with the Massachusetts Office of the Attorney General's Fair Labor Division ("Fair Labor Division") against Defendants alleging violations of Massachusetts law relating to minimum wages, non-payment of wages, overtime pay, prevailing wages, meal periods, and retaliation as asserted herein.

18.     On May 29, 2020, Plaintiff Ceballos filed a Wage Complaint with the Fair Labor Division against Defendants alleging violations of Massachusetts law relating to minimum wages, non-payment of wages, overtime pay, prevailing wages, and meal periods as asserted herein.

19.     On October 15, 2020, the Fair Labor Division issued Plaintiffs Paulino and Ceballos private right of action letters.

20.     Accordingly, Plaintiffs have satisfied all administrative and/or jurisdictional requirements prior to filing a lawsuit and have timely instituted suit in the within matter.

## VI.     <u>Material Facts</u>

### A.     Background

21.     Defendants Hatch Landscape and Hatch Group are asphalt management and commercial snow and ice removal contractors headquartered in Milford, Massachusetts that provide services in multiple states, including at least and primarily Massachusetts and New Hampshire.

### *Facts Applicable to Plaintiff Paulino*

22.     Plaintiff Paulino was employed by Defendants from on or about May 12, 2019 through October 18, 2019.

23.     Throughout his employment with Defendants, Plaintiff Paulino was a non-exempt employee working as a laborer laying down asphalt.

24.     Throughout his employment with Defendants, Plaintiff Paulino performed prevailing wage work for which his hourly rate was $55.81 per hour and non-prevailing wage work for which his hourly rate was $18.00 per hour.

25.     Throughout his employment with Defendants, Plaintiff Paulino routinely and consistently worked about 55 to 60 hours per week on an almost weekly basis, sometimes 14 to 15 hours per day, without any overtime pay.

26.     Additionally, throughout his employment with Defendants, Plaintiff Paulino routinely and consistently worked weeks where he did not receive regular or prevailing wages for all hours worked.

27.     For example, the week of September 22, 2019, Plaintiff Paulino worked a total of 24.42 regular hours, but was only paid for 13.50 hours, and worked 28.85 prevailing wage hours, but was only paid for 28 hours.

28.     Throughout his employment with Defendants, Plaintiff Paulino was routinely and consistently not paid for travel time or meal periods that he was forced to work through, all of which occurred on a daily basis.

29.     As for unpaid meal periods, Plaintiff Paulino worked through his meal periods for approximately 2.5 hours per week during almost each week of his employment with Defendants for which he received no compensation.

30.     These violations of law occurred on a weekly basis while Plaintiff Paulino performed prevailing wage and non-prevailing wage work.

31.     Plaintiff Paulino complained to the Defendants about not being paid proper regular and prevailing wages and overtime wages on several occasions.

32.     On or about October 11, 2019, Plaintiff Paulino, by and through his fiancé, Glenny Bello, contacted the Massachusetts Department of Labor Standards ("Dept. of Labor") to discuss the above-payment scheme and inquire about whether his wage and hour rights were being violated.

33.     Ms. Bello acted as an interpreter for Plaintiff Paulino due to his limited English language skills.

34.     A Dept. of Labor representative informed Plaintiff Paulino and Ms. Bello that Defendants' payment scheme was unlawful and Defendants should have paid Plaintiff Paulino for all hours worked, overtime, and for travel time.

35.     Subsequently, Plaintiff Paulino asked Ms. Bello to report to the Defendants that they were unlawfully failing to pay Mr. Paulino for all hours worked, overtime, and for travel time.

36.     On or about October 11, 2019, Ms. Bello travelled to Defendants' office and, on behalf of Plaintiff Paulino, informed Defendant Hatch that Plaintiff Paulino's was not being paid for all hours worked, overtime, and for travel time.

37.     Ms. Bello, on behalf of Plaintiff Paulino, further informed Defendant Hatch that Defendant Paulino had reported the above-referenced payment scheme and unpaid wages matter to the Dept. of Labor and that the Dept. of Labor had confirmed that Defendants' method of compensating Plaintiff Paulino was unlawful.

38.     Defendant Hatch responded by stating that Plaintiff Paulino should not be complaining because Defendants were paying him "more than [he] deserves."

39.     Defendant Hatch further claimed that the Dept. of Labor was wrong claiming Defendants were violating Plaintiff Paulino's wage and hour rights.

40.     Accordingly, Ms. Bello again called the Dept. of Labor in the presence of Defendant Hatch and a representative again confirmed that Defendants' payment scheme violated Plaintiff Paulino's wage and hour rights.

41.     Toward that end of that meeting, Defendant Hatch angrily informed Ms. Bello that Defendants would pay Plaintiff Paulino "everything he is owed."

42.     Nevertheless, to date, Defendants have failed and/or refused to compensate Plaintiff Paulino for the unpaid hours, overtime, and travel time he worked.

43.     Subsequently, on or about October 18, 2019, Plaintiff Paulino reported to work and overheard Defendant Hatch loudly informing his other employees that Plaintiff Paulino did not want to work, bad mouthing Plaintiff Paulino, and telling his other employees that Plaintiff Paulino "can go to hell."

44.     Plaintiff Paulino became extremely upset that Defendant Paulino was openly retaliating against him and, combined with his realization that Defendants would continue to violate his wage and hour rights, voluntarily left his employment with Defendants.

45.     On information and belief, Defendants have engaged in the same or similar conduct of retaliating and/or constructively discharging other former employees for asserting wage and hour rights or complaining about violations of wage and hour rights.

46.     On information and belief, Plaintiff Paulino worked approximately 460 hours of overtime from May 12, 2019 through October 18, 2019 for which he was not paid overtime compensation.

47.     On information and belief, Plaintiff Paulino worked through his meal periods for approximately 57.5 hours from May 12, 2019 through October 18, 2019 for which he received no compensation.

48.     On information and belief, Plaintiff Paulino worked approximately 230 hours traveling from Defendants' place of business to job sites or between job sites from May 12, 2019 through October 18, 2019 for which he received no compensation.

49.     Additionally, on information and belief, Defendants consistently failed to pay Plaintiff Paulino for all hours worked outside of travel time and worked meal periods and would arbitrarily alter Plaintiff Paulino's time records to reflect a lesser amount of time actually worked on a weekly basis.

50.     As a result of the Defendants' concerted acts and/or omissions, including, but not limited to those described herein, Plaintiff Paulino has sustained loss of wages, overtime pay, and other compensation and/or benefits of employment, and has suffered emotional distress and other great damage.

### *Facts Applicable to Plaintiff Ceballos*

51.     Plaintiff Ceballos was employed by Defendants from on or about June 1, 2018 through October 18, 2019.

52.     Throughout his employment with Defendants, Plaintiff Ceballos was a non-exempt employee working split duties as a laborer laying down asphalt and truck driver/loader/unloader.

53.     Throughout his employment with Defendants, Plaintiff Ceballos performed prevailing wage work for which his hourly rate was $59.03 per hour and non-prevailing wage work for which his hourly rate was $23.00 per hour.

54.     Throughout his employment with Defendants, Plaintiff Ceballos routinely and consistently worked approximately 55 hours per week on an almost weekly basis, without any overtime pay.

55.     Additionally, throughout his employment with Defendants, Plaintiff Ceballos routinely and consistently worked weeks where he did not receive regular or prevailing wages for all hours worked.

56.     For example, the week of June 16, 2019, one of the few weeks where Plaintiff Ceballos did not work overtime, Plaintiff Ceballos worked a total of 39.08 hours but was only paid for 26 hours.

57.     Throughout his employment with Defendants, Plaintiff Ceballos was routinely and consistently not paid for travel time or meal periods that he was forced to work through, all of which occurred on a daily basis.

58.     As for unpaid meal periods, Plaintiff Ceballos worked through his meal periods for approximately 2.5 hours per week during almost each week of his employment with Defendants for which he received no compensation.

59.     These violations of law occurred on a weekly basis while Plaintiff Ceballos performed prevailing wage and non-prevailing wage work.

60.     On information and belief, Plaintiff Ceballos worked approximately 1,080 hours of overtime, consisting of approximately 15 hours per week, from June 1, 2018 through October 18, 2019 for which he was not paid overtime compensation.

61.     On information and belief, Plaintiff Ceballos worked through his meal periods for approximately 180 hours from June 1, 2018 through October 18, 2019 for which he received no compensation.

62.     On information and belief, Plaintiff Ceballos worked approximately 1,440 hours traveling from Defendants' place of business to job sites or between job sites  from June 1, 2018 through October 18, 2019 for which he received no compensation.

63.     Additionally, on information and belief, Defendants consistently failed to pay Plaintiff Ceballos for all hours worked outside of travel time and worked meal periods and would arbitrarily alter Plaintiff Ceballos's time records to reflect a lesser amount of time actually worked on a weekly basis.

### *The Individual Defendant's Liability*

64.     In his capacity as President, Manager, owner, and operator of Defendants Hatch

Landscape and Hatch Group, Defendant Hatch retained and executed operational control over the business and financial affairs of both companies.[1]

65.    Defendant Hatch was responsible for hiring employees to work at Defendants Hatch Landscape and Hatch Group.

66.    Defendant Hatch willfully and intentionally created, established, permitted, condoned, and enforced a policy requiring Plaintiffs to work without proper wages as alleged herein.

67.    Defendant Hatch willfully and intentionally created, established, permitted, condoned, and enforced a policy requiring Plaintiffs to work without overtime as alleged herein.

68.    At all relevant times hereto, Defendant Hatch knew that Plaintiffs were performing straight time and overtime work for which they were not being properly compensated as alleged herein.

69.    Defendant Hatch had the ability to, and did, exert full authority over the policy requiring Plaintiffs to work without proper straight time and overtime pay as alleged herein.

70.    Defendant Hatch had the ability to change and rectify the policy requiring Plaintiffs to work without proper straight time and overtime pay as alleged herein.

71.    Defendant Hatch had operational control over all aspects of Defendants' day-to-day business-related functions.

72.    Defendant Hatch directed all of Defendants' employment practices, including the failure to pay for all hours worked, minimum wages, and overtime as alleged herein.

73.    At all relevant times, Defendant Hatch had active control and management over

---

[1]  *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (corporate officer personally liable because he was instrumental in causing corporation to violate FLSA); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991), *and cases cited therein*.

Defendants Hatch Landscape and Hatch Group in relation to the employees working there, including Plaintiff.

74.    On information and belief, Defendant Hatch is either the sole or partial owner of Defendants Hatch Landscape and Hatch Group with operational control over both entities and/or otherwise intentionally and/or knowingly profited directly or indirectly from the illegal under-compensation of Plaintiff.

75.    Accordingly, Defendant Hatch controlled Defendants Hatch Landscape and Hatch Group's financial affairs and was responsible for the above described unlawful payment scheme and the failure to compensate Plaintiff with at least the agreed-upon payment of wages, minimum wages, prevailing wages, and overtime compensation prescribed by the FLSA, the Wage Act, and the Prevailing Wage Law

## B.    Applicable Law

### *Minimum Wage and Overtime Pay Violations*

76.    At all relevant times, Plaintiffs were non-exempt employees entitled to payment of a minimum wage under applicable law, wages for all hours worked, and overtime wages as defined under the FLSA and the Wage Act.

77.    At all relevant times, Plaintiffs were entitled to compensation in an amount equal to the agreed-to compensation as prescribed by the FLSA and the Wage Act for all hours worked and overtime compensation equal to one and one-half (1 ½) times the agreed upon regular rate of compensation on an hourly basis.

78.    Defendants willfully, intentionally, and repeatedly violated the FLSA and Wage Act by failing or refusing to compensate Plaintiffs for all hours in an amount equal to the agreed-upon compensation prescribed by the FLSA and the Wage Act for all straight time hours as

previously alleged herein.[2]

79.     Defendants willfully, intentionally, and repeatedly violated the  FLSA and the Wage Act by failing or refusing to compensate Plaintiffs the legally required overtime pay of one and one-half (1 ½) times their regular rate of pay for all hours worked over forty (40) in a workweek as previously alleged herein

### Work Suffered or Permitted

80.     Defendants are liable for failing or refusing to pay Plaintiffs for all hours Plaintiffs were "suffered or permitted to work" in any and all workweeks whenever Defendants knew or had constructive knowledge that the work was being performed—regardless of whether the work was requested, authorized, or needed.

81.     Defendants knew or had reason to believe that Plaintiffs were performing straight time and overtime work for which they were not being compensated, including worked meal periods and travel time, as previously alleged herein.

82.     As such, Defendants had constructive, if not actual, knowledge that Plaintiffs regularly performed straight time and overtime work for which they were not compensated in any amount as previously alleged herein.

83.     Nevertheless, Defendants failed or refused to pay Plaintiffs the compensation to which Plaintiffs were legally entitled under the FLSA and the Wage Act.

---

[2]  It is black letter law than an employee of a private employer may not "volunteer," in whole or in part, to perform work for his or her employer, insofar as an employee may not waive his or her right to minimum wage and overtime pay due under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). Nor may FLSA rights be abridged, waived, or modified by contract or custom.  *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944)("***The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it.*** Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act.  Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.")(emphasis added; footnote omitted).

*Prevailing Wage Violations*

84.     At all relevant times, Plaintiffs were non-exempt laborers employed by Defendants within the Commonwealth of Massachusetts in the performance of public works subject to the Prevailing Wage Law, M.G.L. c. 149, §§ 26 – 27 *et seq.* and entitled to payment of a minimum prevailing wage rate, as set by applicable law, regulation, or the commissioner and referenced herein, for all hours worked performing prevailing wage work as prescribed by the Prevailing Wage Law.

85.     At all relevant times, Plaintiffs were entitled to overtime compensation in an amount equal to the equal to one and one-half (1 ½) times their prevailing wage rates for all hours worked performing prevailing wage work over forty (40) during the work week.

86.     Nevertheless, Defendants failed or refused to pay Plaintiffs the compensation to which Plaintiffs were legally entitled under the FLSA and the Prevailing Wage Law.

*Defendants' Failure to Keep Employment Records*

87.     Defendants willfully and repeatedly violated 29 U.S.C. §§ 211(c) and 215(a)(5) of the FLSA by failing to make, keep and/or preserve adequate and accurate records of Plaintiffs' wages, hours, and other conditions and practices of employment as prescribed by regulations duly issued pursuant to authority granted under the FLSA and found in 29 C.F.R. § 516.2.

88.     At all relevant times, Defendants failed and/or refused to make and/or keep a true of the amount paid each pay period to each Plaintiff, of the hours worked each day and each week by each Plaintiff, and other conditions and practices of employment. *See* M.G.L. c. 151 § 15 and 19 and M.G.L. c. 149, §27B.

89.     As a result of the Defendants' concerted acts and/or omissions, including, but not limited to, those described herein, Plaintiffs have sustained loss of wages, overtime pay, and other

compensation and/or benefits of employment, and have suffered emotional distress and other great damage.

## VII.   Claims for Relief

90.    Plaintiffs incorporate the allegations contained in ¶¶1 through 89 above in the counts set forth below.

### Count One
*Violations of the FLSA*
*29 U.S.C. § 201, et seq.*
*Payment of Wages, Minimum Wage and Overtime Wage Violations*

91.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the FLSA by failing to pay Plaintiffs all wages owed, minimum wages, and overtime wages, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to 29 U.S.C. § 216(b).

### Count Two
*Violations of the Massachusetts Wage Act*
*M.G.L. c. 149 § 148, et seq. and M.G.L. c. 151, § 1, et seq.*
*Payment of Wages, Minimum Wage, and Overtime Wage Violations*

92.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the Wage Act by failing to pay Plaintiffs all wages owed, minimum wages, and overtime wages, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to M.G.L. c. 149 § 150, M.G.L. c. 151. §1B, and M.G.L. c. 151, § 20.

### Count Three
*Violations of the Massachusetts Prevailing Wage Law*
*M.G.L. c. 149, §§ 26 – 27, et seq.*
*Failure to Pay Prevailing Wages*

93.    Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the Prevailing Wage Law by failing to pay

Plaintiffs prevailing minimum and overtime wages for all hours worked, thereby causing Plaintiffs to suffer damages as aforesaid, for which they are entitled to relief pursuant to M.G.L. c. 149 §27, *et seq*.

### Count Four
#### *Violation of the Massachusetts Wage Act*
#### *M.G.L. c. 149 § 148A and M.G.L. c. 151 § 19*
#### *Retaliation against Plaintiff Paulino*

94.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, engaged in unlawful retaliation and/or discrimination against Plaintiff Paulino in the manner alleged herein, thereby causing Plaintiff Paulino to suffer damages as aforesaid, for which he is entitled to relief pursuant to M.G.L. c. 149 § 150 and M.G.L. c. 151 § 19.

### Count Five
#### *Violations of the FLSA*
#### *29 U.S.C. § 215(a)(3)*
#### *Retaliation against Plaintiff Paulino*

95.     Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, engaged in unlawful retaliation and/or discrimination against Plaintiff Paulino in the manner alleged herein, thereby causing Plaintiff Paulino to suffer damages as aforesaid, for which he is entitled to relief pursuant to 29 U.S.C. §216(b).

### VIII.   Prayers for Relief

**WHEREFORE**, Plaintiffs pray that this Honorable Court grant the following relief:

1.     A declaratory judgment declaring the acts and/or omissions of the Defendants, including, but not limited to those complained of herein, violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, the Wage Act, M.G.L. c. 149 § 148, *et seq.* and M.G.L. c. 151, § 1, *et seq.*, and the Prevailing Wage Law, M.G.L. c. 149, §§26-27, *et seq.*

2.      An injunction or other equitable relief, including, but not limited to, lost back pay and benefits and front pay under applicable law.

3.      An award of compensatory damages.

4.      An award of emotional distress damages.

5.      An award of punitive damages.

6.      With respect to Plaintiff Paulino, an award of two (2) months wages pursuant to M.G.L. c. 151 §19.

7.      An award of a civil penalty pursuant to M.G.L. c. 149 § 27C.

8.      An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

9.      An award of liquidated damages in an amount equal to three (3) times the amount of wages and/or benefits owed pursuant to M.G.L. c.149, §27, M.G.L. c. 149 § 150, M.G.L. c. 151, §1B, and M.G.L. c. 151, § 20.

10.     An award of reasonable attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

11.     An award of reasonable attorneys' fees and costs pursuant to owed pursuant to M.G.L. c. 149, §27, M.G.L. c. 149 § 150, M.G.L. c. 151, §1B, M.G.L. c. 151, § 19, and M.G.L. c. 151, § 20.

12.     An award of other appropriate injunctive and/or equitable relief pursuant to 29 U.S.C. § 216(b).

13.     An award of other appropriate injunctive and/or equitable relief pursuant to M.G.L. c. 149 § 150, M.G.L. c. 151, § 19, M.G.L. c. 151, § 20, M.G.L. c. 149, §27, and any other applicable Massachusetts state law.

14.     An award of statutory interest.

15.     An award of such other and further relief as this Honorable Court deems just and proper.

## IX.   Demand for Jury Trial

The Plaintiffs hereby demand a trial by jury on all counts so triable.

## X.    Designation of Trial Counsel

The Plaintiffs hereby designate Danilo A. Borgas, Esquire as trial counsel.

Plaintiffs,
By their attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: December 10, 2020**

**/s/ Danilo A. Borgas**
**Danilo A. Borgas, Esq.  (#690709)**
**Anthony E. Sinapi, Esq. (#694350)**
2374 Post Road Suite 201
Warwick, RI  02886
Phone: (401) 739-9690
FAX: (401) 739-9040
Email: dab@sinapilaw.com
              aes@sinapilaw.com